UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA,             :    **MEMORANDUM AND ORDER**
                                      :    06-CR-42 (DLI)
        -against-                     :
                                      :
JAMES PIERCE,                         :
                    defendant.        :
----------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

On October 22, 2005, defendant James Pierce was arrested by the New York City Police Department for carrying a firearm and a quantity of ammunition in violation of New York law. On January 19, 2006, a federal grand jury returned a one-count indictment charging the defendant as a felon in possession of a firearm and a quantity of ammunition in violation of 18 U.S.C. §922(g)(1). On July 25, 2006, a second federal grand jury returned a one-count superceding indictment charging the defendant with possession of a firearm and a quantity of ammunition after having previously been convicted of three violent felonies, each committed on separate occasions, in violation of 18 U.S.C. §922(g)(1) and 18 U.S.C. §924(e)(1).[1] Defendant now moves to suppress the firearm seized from him at the time of his arrest, allegedly in violation of his Fourth Amendment rights. For the reasons set forth below, defendant's motion is denied.

Defendant also moves, pursuant to Fed. R. Crim. P. 12(b)(3)(a), to dismiss the 18 U.S.C. §922(g)(1) and 18 U.S.C. §924(e)(1) indictments. Defendant claims that one of the three convictions

---

[1] 18 U.S.C. §922(g)(1) makes it illegal for a person convicted of a crime punishable by a term of imprisonment exceeding one year to posses a firearm. 18 U.S.C. §924(e)(1), the "Armed Career Criminal Act ("ACCA"), provides for a minimum term of imprisonment of fifteen years for a defendant who "violates section 922(g) . . . [and] has three previous convictions for a violent felony or serious drug offense."

1

upon which the indictment is predicated, Criminal Possession of a Weapon in the Second Degree, does not meet the statutory definition of a "violent felony" under 18 U.S.C. §924(e)(1). For the reasons set fourth below, the court finds that defendant was convicted of a violent felony and denies defendant's motion to dismiss the indictment.

## CREDIBILITY FINDINGS

A hearing was held on October 27, 2006, and continued on January 18, 2007, during which New York City Police Department Sergeant Matthew Walsh ("Walsh") and New York City Police Department Lieutenant Leighton Myrie ("Myrie") testified for the government and New York City Police Department Sergeant Michael Miller ("Miller") testified for defendant. To the extent indicated below, the court finds the testimony of each witness to be credible.

## FINDINGS OF FACT

On October 22, 2005, New York City Police Department Detective Dwayne Chandler received information from a confidential informant regarding a person with a firearm. (Tr. 62).[2] Chandler works for the Police Department's firearms investigation unit. (Tr. 61). Chandler was off duty, at home with his family, and unable to act on the tip. *Id.* Chandler called Myrie to ask for his assistance. (Tr. 62). Myrie, a former partner and old friend of Chandler from the Police Academy, was on duty and close to the location where the person with the firearm was reported to be. (Tr. 62). Myrie then requested the assistance of Miller and Walsh. Myrie knew Miller and Walsh to be experienced and reliable. (Tr. 62-63). Having secured Walsh's and Miller's cooperation, Myrie called Chandler and told him that he was prepared to help. (Tr. 63). Chandler then gave Myrie the

---

[2] "Tr." refers to the hearing transcript of October 27, 2006, and January 18, 2007. Pages 1-54 of the transcript were made on October 27, 2006, and pages 55-94 of the transcript were made on January 18, 2007.

2

confidential informant's cell phone number, and Myrie called the confidential informant. (Tr. 63). Myrie had never worked with this informant before, and did not know his name. (Tr. 68). However, the confidential informant was "registered" with the District Attorney's Office. (Tr. 81). According to Myrie, the District Attorney's Office maintains a registry of informants. *Id.* Over time, registered informants are evaluated for reliability. Registered informants may receive a reward for accurate information. *Id.*

The confidential informant told Myrie that a black male wearing a brown leather jacket with a white hood, blue jeans and tan Timberland boots was carrying a loaded firearm and standing outside 233 Jefferson Avenue in Brooklyn. (Tr. 10, 63). Myrie did not write down anything the confidential informant told him. (Tr. 77). Myrie conveyed this information to Walsh who, in turn, conveyed it to Miller. (Tr. 10, 50). Miller, Walsh and Myrie got into Miller's car and drove to the vicinity of 233 Jefferson Avenue. The ride lasted between five and ten minutes. (Tr. 11, 46, 65-66, 70-71). Miller drove, Myrie sat in the passenger seat and Walsh sat in the back seat. *Id.* Upon entering Jefferson Avenue at the intersection of Jefferson and Nostrand Avenues, Myrie called the confidential informant's cell phone. (Tr. 65, 72). The confidential informant told Myrie that "the individual in question was in the middle of the block next to a moving van." (Tr. 65).

As stated by the informant, the officers observed a moving truck toward the middle of the block. (Tr. 21, 65, 71). Miller proceeded down Jefferson Avenue toward 233 Jefferson Avenue. Miller double parked the car and turned off the ignition. (Tr. 12, 47, 65). As described by the informant, the officers observed a black male wearing a brown leather jacket with a white hood, blue jeans and tan Timberland boots who later became known to them as James Pierce, the defendant. (Tr. 12-13, 47-48, 65-66). Also, as described, the defendant was standing alone in front of 233

3

Jefferson Avenue. (Tr. 21, 71). Miller looked up and down Jefferson Avenue to determine whether the defendant was alone or was acting as a lookout. (Tr. 47-48). According to Walsh and Miller, the defendant was pacing up and down the street and appeared to be nervous. (Tr. 15, 31-32, 47-48). Although there were cars parked on both sides of the street, Walsh had a clear, unobstructed view of the defendant. (Tr. 14, 21). Walsh observed that one side of defendant's jacket was hanging lower than the other, indicating the presence of a heavy object. (Tr. 15). Walsh also saw defendant adjust something in this pocket several times. *Id*. When the defendant bent over, Walsh observed the butt of a handgun protruding from his right front jacket pocket and told the other officers. (Tr. 15, 16, 66). Neither Myrie nor Miller saw the defendant bend over or adjust his right pocket. (Tr. 48, 74). Myrie then decided that the three would approach the defendant. (Tr. 74).

The three exited the vehicle, crossed Jefferson Avenue and approached the defendant. (Tr. 16). Walsh led, followed by Myrie. (Tr. 67). While the defendant was facing away from Walsh, Walsh said "Police, don't move." *Id*. The defendant then raised his left hand in the air, but began to reach into his right pocket with his right hand. (Tr. 17, 67). Walsh tackled the defendant. (Tr. 17). Miller and Walsh then handcuffed and searched the defendant. *Id.* They recovered a Roxio .38-caliber revolver and arrested defendant. (Tr. 17-18).

## CONCLUSIONS OF LAW

A. *Reasonable Suspicion to Stop and Detain*

    1.    Defendant's Right to a Hearing

As an initial matter, the government contests the defendant's right to a suppression hearing because he did not submit an affidavit that was based on personal knowledge and set forth sworn allegations of facts. The defendant maintains that he is entitled to a hearing because the knowledge

4

available to the Police officers before viewing defendant and their observations of and conduct toward the defendant is at issue. The court agrees that defendant is entitled to a hearing.

In general, "a defendant seeking the suppression of evidence is not automatically entitled to an evidentiary hearing on the claim, but must make a preliminary showing of facts which, if proved, would require the granting of relief." *U.S. v. Ventura,* 97 CR. 1251, 1998 WL 186737 *1 (S.D.N.Y. April 17, 1998). Absent a contested issue of material fact, a defendant is not entitled to an evidentiary hearing. *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992). However, even where the preliminary showing of facts requiring a hearing is weak, the court has discretion to determine whether to hold a suppression hearing. *See U.S. v. Shamsideen,* 03 CR. 1313, 2004 WL 1179305 *2 (S.D.N.Y. March 31, 2004) (holding that federal district courts have broad discretion when deciding whether or not to hold a suppression hearing "even where the defendant's allegations are general and conclusory"); *see U.S. v. Mathurin,* 148 F.3d 68, 70 (2d Cir. 1998) (holding that conclusory statements that a defendant was never given Miranda warnings warranted a hearing to determine whether the warnings were given.).

In order to determine defendant's entitlement to a hearing, it is helpful to review the law of "investigatory stops." In general, "[t]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Reasonable suspicion arises where law enforcement officers have some objective justification for stopping an individual that is more than an "inchoate and non-particularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123–24

5

(2000) (citing *Sokolow*, 490 U.S. at 7; quoting *Terry*, 392 U.S. at 27) (internal quotation marks omitted). The court must consider the totality of circumstances from the point of view of a trained and experienced officer. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981).

While the defendant's suppression motion did not contain an affidavit setting forth sworn allegations of fact disputing the government's basis for the investigatory stop, the government bears the burden of proving, by a preponderance of the evidence, that reasonable suspicion existed for a stop. *U.S. v. Kiyuyung,* 171 F.3d 78, 83 (2d Cir. 1999)*, United States v. Perea*, 986 F.2d 633, 644-45 (2d Cir. 1993). At least one court has held that, where the defendant claims that the government lacked reasonable suspicion justifying a forcible stop, a suppression hearing is appropriate, and, at the hearing, the government must "establish, by a preponderance of the evidence, that [there was] reasonable suspicion of unlawful conduct, based upon specific and articulable facts." *U.S. v. Shamsideen,* 03 CR.1313, 2004 WL 1179304 *2 (S.D.N.Y. May 3, 2004). The court agrees with this approach because, even if the defendant did submit an affidavit, it would be of limited value. *U.S. v. Shamsideen,* 03 CR.1313, 2004 WL 1179305 *10 ("[h]owever, [where there is a challenge to the officer's basis for developing reasonable suspicion of criminal activity] the defendants do not have knowledge of the essential facts with which to create specific factual disputes."). This is especially true in a case such as this where the reasonable suspicion came from a tip provided by a confidential informant and the police officers' independent and corroborating observations. *See U.S. v. Pena,* 961 F.2d at 339. The government is required to show that the officer's reasonable suspicion justified

6

the investigatory stop, even if the defendant has no facts of its own to offer.[3]

2.      The Officers Had Reasonable Suspicion to Stop defendant

Reasonable suspicion for an investigatory stop may be developed through a specific, "detailed and contemporaneous tip that the officers received from a reliable confidential informant." *See U.S. v. Vargas,* 369 F.3d 98, 101 (2d Cir. 2004). In evaluating whether a tip from a confidential informant creates reasonable suspicion, the court is required to look at two factors: (1) whether the informant is reliable; and (2) the veracity of the information. *See Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) ("reasonable suspicion, like probable cause, is dependent upon both the content of information possessed . . . and its degree of reliability. Both factors – quantity and quality – are considered in the totality of the circumstances – the whole picture that must be taken into account when evaluating whether there is reasonable suspicion."). The veracity and reliability of an informant are fact sensitive determinations dependant on the totality of the circumstances. *Phaneuf v. Fraikin*, 448 F.3d 591, 598 (2d Cir. 2006) (aside from veracity and reliability, other factors include "whether the information an informant has provided is corroborated by independent investigation, because an informant who is right about some facts is more likely to be right about others.").

Recently, the Second Circuit has adopted a "sliding scale" to determine whether an informant's tip creates reasonable suspicion.  The more information that is known about the

---

[3]      However, the government need not produce the confidential informant who provided the tip that defendant was carrying a loaded firearm since this may place the informant and other investigations in jeopardy. *McCray v. Illinois*, 386 U.S. 300, 311-313 (1967); *United States v. Pena*, 961 F.2d 333, 340 (2d Cir. 1992). The government need only produce the "officer who received the tip from the informant [to] testify and be subject to cross-examination." *Pena* at 340 (citing *McCray* at 313).

informant, the less information the informant needs to provide and the less the police need to corroborate the tip. *U.S. v. Elmore*, --- F.3d ---, 2007 WL 934894, *6 (2d Cir. Mar. 29, 2007); *see also Alabama v. White,* 496 U.S. at 330 ("[i]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.").

To the extent that Myrie did not know the informant's identity and had not worked with him/her before, the informant was anonymous to him. However, Myrie knew that Chandler believed that the tip was reliable. Chandler previously worked with the informant, and the informant was registered with the District Attorney's Office. Chandler also had given Myrie the informant's cell phone number. The court imputes Chandler's knowledge of the reliability of the informant to Myrie because Myrie and Chandler are both trained law enforcement officers. *See U.S. v. Colon*, 250 F.3d 130 (2d Cir. 2001). Therefore, the court only requires a minimal amount of information from the informant and a minimal amount of corroboration of the informant's tip to create reasonable suspicion necessary for the stop. Moreover, since the informant was registered with the District Attorney's Office, the informant was aware that his tip was not anonymous, adding another level of reliability. *See Marinis v. Village of Irvington,* 212 F. Supp. 2d 220, 222-225 (S.D.N.Y. 2002).

The informant provided detailed information about the defendant, including where he was standing, his dress, and the fact that he had a gun, in addition to other activity occurring on the street where defendant was located. Each of these facts was later verified by the officers since the defendant was indeed found outside 233 Jefferson Avenue, wearing a brown leather jacket with a white hood, blue jeans and tan Timberland boots – exactly as described by the informant. However, the Supreme Court has held that an informant's description as to what the defendant is wearing and

his location possesses limited indicia of reliability:

> [a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Florida v. J.L.,* 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

The court must therefore look to other indicia of reliability. The informant gave Myrie his cell phone number, and Myrie was able to call the informant upon reaching Jefferson Avenue. If the information turned out to be inaccurate, Myrie may have been able to trace the informant through the cell phone number he was provided, in addition to locating him through the District Attorney's Office's informant registry. *See U.S. v. Hernandez,* 00 CR. 6E, 2001 WL 1344832, *11 (W.D.N.Y. Apr. 13, 2001) (an anonymous tip to a 911 line had indicia of reliability where the police could have traced the call and determined the identity of the informant). Perhaps the most compelling indication that the tip was reliable was the fact that, upon being called back by Myrie, the informant correctly advised him of the presence of a moving truck and people moving furniture on Jefferson Avenue. Such information suggests that the informant either had recently observed the defendant or was observing the defendant as the officers arrived. The presence of the moving truck and the people moving furniture gave Myrie reason to believe that the informant did indeed have knowledge that defendant was in possession of a gun. *See U.S. v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) ("an informant who is right about some facts is more likely to be right about others.").

The officers were dealing with a registered informant, but, even if the informant was

completely anonymous, the investigatory stop was justified by "personal observations made by the officers that corroborate[d] information furnished." *U.S. v. Muhammad*, 463 F.3d 115, 122 (2d Cir. 2006); s*ee also U.S. v. Simmons*, 05 CR. 1288, 2007 WL 162479 (S.D.N.Y. Jan. 18, 2007) (an anonymous tip, coupled with observations of officers arriving at the scene, justified seizure). Moreover, "under certain circumstances, the manner in which a person acts when confronted by law enforcement officials can be grounds for raising a reasonable suspicion to conduct a limited search, such as in the case of a stop and frisk." *Phaneuf v. Fraikin,* 448 F.3d at 598 (2d Cir. 2006).

In *Muhammad*, the court found that, even though the anonymous tip lacked any indicia of reliability, the stop was justified because the defendant fled when approached. *U.S. v. Muhammad*, 463 F.3d at 123 ("Muhammad's evasive conduct was the additional factor . . . that corroborated the anonymous tip and provided the objective manifestation that criminal activity was afoot."). In this case, Miller and Walsh observed the defendant acting suspiciously, moving back and fourth and looking up and down Jefferson Avenue, as if acting as a lookout. *See United States v. Paulino*, 850 F.2d 93, 98 (2d Cir. 1988) (furtive movement provided a legal basis for [a] a protective search). Walsh testified that, several times, he observed the defendant adjust his right pocket, which appeared to contain a heavy object, and then observed the butt of a gun protrude from this pocket when the defendant bent over. It was at this point that the officers exited their car and approached the defendant. Upon identifying themselves as police, the defendant reached for his right pocket. It was at this point that Walsh tackled the defendant to the ground, searched him, recovered the gun and arrested him. The court finds that tip, coupled with the officer's observations, justified the stop.

The court is also aware that "[w]here the tip concerns an individual with a gun, the totality-of-the-circumstances test for determining reasonable suspicion should include consideration

10

of the possibility of the possession of a gun, and the government's need for a prompt investigation." *U.S. v. Bold,* 19 F.3d 99, 104 (2d Cir. 1994). Here, the tip provided by the registered informant was corroborated by the officers. The officers' independent observations of the defendant not only further corroborated the informant's information, but also provided an independent basis upon which to stop defendant. Importantly, when defendant was aware of the police presence, he reached for the pocket that contained the weapon. At this point, to protect their lives and safety and that of the public, the officers were justified in stopping and searching defendant. Accordingly, the stop was supported by reasonable suspicion and the defendant's motion to suppress is denied.

*B. Motion to dismiss the indictment*

Defendant's criminal history includes a conviction for criminal possession of a weapon in the second degree in 1983, in violation of New York Penal Law ("N.Y.P.L.") § 265.03, robbery in the second degree, also in 1983, and attempted murder in the second degree in 1986.[4] Government's Memo 4. While there is no dispute that the robbery in the second degree conviction and the attempted murder in the second degree conviction are violent offenses for ACCA purposes, the defendant claims that the conviction for criminal possession of a firearm in the second degree was not a violent offense as required by 18 U.S.C. §924(e)(2)(B).

The minutes of the Kings County Supreme Court sentencing proceeding from June 16, 1983 show that the judge noted that, in committing the crime of criminal possession of a weapon in the second degree, the defendant caused "injuries to the complainant which involved parts of his liver

---

[4] Neither party's submissions indicate the precise provisions of New York's Penal Law the defendant was convicted under with respect to the robbery in the second degree and attempted murder in the second degree charges. However, as noted herein, neither party disputes that both these convictions are violent offenses for ACCA purposes.

as well as his intestines." Carter Decl. Exhibit A at 3. The court further added that defendant's probation report was "not a good one." *Id.* The government alleges that the injuries demonstrate that the defendant's conviction was for a violent act as defined by ACCA. The defendant, however, argues that the transcript is insufficient to demonstrate whether the conviction was a violent act, as defined by ACCA, since the entire probation report is not available, and the defendant never indicated that he agreed with the report's findings. The court agrees with the government that the sentencing minutes set forth facts demonstrating that defendant was convicted of a violent felony as defined by ACCA.

> For the purposes of ACCA, a violent felony is defined as
>
> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*See* 18 U.S.C. §924(e)(2)(b). Defendant's 1983 conviction for criminal possession of a weapon in the second degree in violation of N.Y.P.L. § 265.03 is for a felony that makes it illegal to "possess a machine-gun or loaded firearm with intent to use the same unlawfully against another." N.Y.P.L. § 265.03 (1983). However, merely possessing a weapon may not present a serious potential risk of physical injury and therefore may not qualify as a predicate felony for ACCA purposes. Thus, N.Y.P.L. § 265.03 (1983) is a statute that reaches "conduct that qualifies as a violent felony under the ACCA and conduct that does not." *U.S. v. Danielson,* 199 F.3d 666, 672 (2d Cir. 1999). Accordingly, defendant alleges that his conviction under N.Y.P.L. § 265.03 does not qualify as a violent felony under ACCA.

In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court adopted a "categorical approach" in determining whether a prior conviction constitutes a "violent felony" under the ACCA. *See also James v. U.S.,* --- S.Ct. ----, 2007 WL 1135524 *(*Apr. 18, 2007) (holding that "attempted burglary under Florida law is an offense within the scope of 18 U.S.C. §924(e)(2)(b)(ii)). The Supreme Court's "categorical approach" permits a court "to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* When a statute's definition reaches "conduct that qualifies as a violent felony under the ACCA and conduct that does not," the Court's categorical approach allows the court to review "the indictment or information and jury instructions." *Taylor v. United States*, 495 U.S. at 601, 110 S.Ct. at 2160. The Court stopped at those documents because of the "practical difficulties and potential unfairness" of "an approach that would require the sentencing court to engage in an elaborate fact-finding process regarding the defendant's prior offenses." *Id.* at 601, 110 S.Ct. at 2159.

*Taylor* has since been expanded to encompass cases where there was no trial. In such cases, in order to determine whether a felony is violent for ACCA purposes, the court is required to look to "easily produced and evaluated court documents" such as plea minutes and presentence reports. *U.S. v. Palmer*, 68 F.3d 52, 69 (2d Cir. 1995) (quoting *United States v. Spell*, 44 F.3d 936, 939 (11th Cir. 1995)); *United States v. Brown*, 52 F.3d 415, 426 (2d Cir. 1995) (an underlying conviction's presentence report can be examined in determining whether a defendant qualified as an "armed career criminal."). The Second Circuit's holding in *Palmer* reiterated that *Taylor* prohibits a court from engaging in "elaborate" fact-finding when determining whether a prior felony was violent. *See Palmer,* 68 F.3d at 56.

The defendant argues, however, that a presentence report, such as the type relied on in

13

*Palmer* and *Brown* can only be used to show that the conviction was for a violent felony if the defendant acquiesced to the report's finding. None of the cases address whether or not a defendant must agree with a presentence report in order for the report to be used to demonstrate an ACCA predicate felony. Defendant correctly asserts, however, that the court in *Palmer* reasoned that, because the defendant's "on-the-record agreement to the description of his conduct proffered by the prosecuting attorney result[ed] in the functional equivalent of a plea agreement with respect to that conduct," the plea agreement could be used to demonstrate the existence of a violent felony. In *U.S. v. Harrison*, 03 CR 875, 2004 WL 434624, *6 (S.D.N.Y. Mar. 9, 2004), the court explained that " an admission by the defendant of conduct and facts underlying the conviction . . . ensures that the current sentencing court need not engage in any fact-finding. Thus, the plea minutes and presentence report provide the sentencing court with an undisputed and accurate description of the predicate crime, from which it can determine whether the statutory definition necessitating an enhancement has been met." 2004 WL 434624 at *7.

The court finds that an admission by the defendant is not necessary to establish that a crime was violent for ACCA purposes because, although an admission by the defendant absolves the court of *any* fact-finding, the Supreme Court in *Taylor v. United States* only cautioned against *elaborate* fact finding. Thus, the presence of an admission is merely prophylactic. It assures that the Supreme Court mandate is more than satisfied, although it is not necessary in all circumstances.

In this case, the sentencing judge referred to facts contained in a presentence report. In imposing sentence, the court found relevant the fact that defendant's actions caused the victim to suffer damage to his liver and intestines. The defendant's acts encompassed the use of a firearm that caused such serious injury to the victim. Significantly, none of the parties objected to the

sentencing court's observations. In light of the fact that the Supreme Court has permitted courts to review plea minutes and presentence reports, it is logical to conclude that a review of sentencing minutes would also be permissible. In the case at bar, the court is not engaging in "elaborate" fact finding by concluding that the crime that defendant pled guilty to, criminal possession of a weapon in the second degree, was a violent felony for purposes of ACCA, even in the absence of defendant's admission. Therefore, the defendant's motion to dismiss the indictment is denied.

## CONCLUSION

Defendant's motion to suppress the weapon is denied in its entirety because the court finds that reasonable suspicion existed for the police to conduct a *Terry* stop. The Court also denies defendant's motion to dismiss the superceding indictment.

DATED:   Brooklyn, New York
         April 19, 2007

                                                    _____/s/_____
                                                    DORA L. IRIZARRY
                                                    United States District Judge