```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------- x
                                                      :
UNITED STATES OF AMERICA,                             :
                                                      :    MEMORANDUM AND ORDER
                    -against-                         :
                                                      :    06 Cr 42 (DLI)
                                                      :
JAMES PIERCE,                                         :
                                                      :
                                          Defendant.  :
----------------------------------------------------- x
```
**DORA L. IRIZARRY, United States District Judge**

    Defendant James Pierce was charged in a single count indictment with being a felon in possession of a firearm and was found guilty after a two-day jury trial. He filed this motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 or, in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33. He argues that the evidence presented at trial was insufficient to support his conviction. For the reasons stated below, the court finds his contention to be without merit and denies the motion in its entirety.

## Background

    On October 22, 2005, the defendant was arrested and charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). The statute makes it unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess in or affecting commerce, any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. 18 U.S.C. § 922(g)(1). Prior to trial, the defendant and the government stipulated to two of the three elements needed to prove such an offense. They stipulated that the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year and that the firearm alleged to have found on him

had been transported in commerce across state lines.  The jury was informed of these stipulations (Trial Transcript ("Tr.") 97), and was instructed only to decide whether the defendant knowingly and intentionally possessed the loaded Roxio .380 caliber handgun (Trial Exhibit ("Tr. Exh.") 1) that the police allegedly seized from defendant's person.

To prove its case, the government presented as witnesses the three police officers who arrested the defendant on October 22, 2005 and the fingerprint expert who examined the firearm. The defendant did not testify.

At the time of the defendant's arrest, Leighton A. Myrie, Matthew Walsh and Michael Miller were all officers in the New York Police Department, assigned to the 81st Precinct in the Bedford-Stuyvesant neighborhood of Brooklyn. On the afternoon of Saturday, October 22, 2005, Myrie, then a lieutenant, received information from a reliable confidential informant about a black male wearing a brown leather jacket, a white hooded sweatshirt, blue jeans and tan Timberland boots, on Jefferson Avenue between Nostrand and Marcy Avenues. (Trial Transcript ("Tr."), 100-103).  This information came to Lt. Myrie through a detective who had personally worked with the confidential informant.  (Tr. 102).  Lt. Myrie then assembled a team with Sgts. Michael Miller and Matthew Walsh, and they "responded to the location."  (Tr. 113).  Both Miller and Walsh were members of the precinct's all plain-clothes anti-crime team, and the three officers drove to the location in Miller's unmarked automobile.  (Tr. 45, 110, 112-113).  Sgts. Miller and Walsh were in plainclothes and had their shields displayed around their necks. (Tr. 47, 118).  Lt. Myrie was in uniform. (Tr. 114).

They arrived on Jefferson Avenue in the late afternoon in broad daylight.  (Tr. 48).  The one-way street, lined with row houses, ran west to east with cars parked both sides.  They double-parked on the street and began to observe the area.  (Tr. 115).  Within five minutes, they

noticed the defendant, fitting the physical and clothing description provided by the informant, standing on the sidewalk in front of 233 Jefferson Avenue. (*Id*.) They did not see anyone else fitting that description. (Tr. 108, 121). The defendant was pacing back and forth on the sidewalk. (Tr. 53). From the back seat of their unmarked car, Sgt. Walsh noticed "something heavy" in the defendant's pocket and, saw what he believed to be, the butt of a gun sticking from the right pocket as the defendant bent down. (Tr. 53, 82-83). He mentioned what he saw to the other two officers, who did not see the gun. (Tr. 54, 82, 106, 117).

Sgt. Walsh then left the car and proceeded toward the defendant from the street. The defendant was facing the building and had his back to Sgt. Walsh. (Tr. 53). The other officers also left the car and took a "routine tactical approach." (Tr. 118). Sgt. Miller approached the defendant from the sidewalk on the left. (*Id*.). Lt. Myrie stayed further back to prevent possible interference by other persons. (Tr. 107). When Sgt. Walsh yelled, "Police, don't move," the defendant reached for his right pocket. (Tr. 54-55). He instantly was tackled with a bear hug by Sgt. Walsh and pressed face down to the ground. (Tr. 119). Sgt. Miller then helped to handcuff the defendant. From the right jacket pocket, Sgt. Walsh recovered a loaded black revolver. (Tr. 56, 119). At trial, both Walsh and Miller identified the defendant as the man they had handcuffed on the street. (Tr. 48, ). Lt. Myrie initially made the mistake of pointing to defense counsel as the person they seized, but subsequently corrected himself. (Tr. 104-105). All three officers testified to seeing the gun removed from the defendant's right pocket.

The government's expert witness, Jon Yeaman examined the gun at about 5:30 p.m. that evening at the 81st Precinct. (Tr. 127). He dusted the gun but found no fingerprints. (*Id.*). He noted that, in his experience, the success rate of obtaining fingerprints from firearms is only about one in every ten guns. (Tr. 127-28).

After the close of the government's case, the defendant twice moved for a directed verdict of acquittal, arguing both times, that the government had failed to sustain its burden of proof. (Tr. 129 & 136). Both motions were denied. (Tr. 130 & 136). In its closing argument, the defense suggested that the gun was planted by the police by questioning the account of how the police seized the defendant. The defense noted incredulously that the police officers would leave their car and proceed toward what they believed to be an armed suspect without previously devising a plan of approach and without drawing their own firearms. (Tr. 175). The defense also reminded the jury that defendant's fingerprints were not found on the gun, and concluded that the government did not have sufficient evidence to prove guilt beyond a reasonable doubt.

The jury asked for a partial read-back of Sgt. Walsh's testimony, and then found defendant guilty of being a felon in possession of a firearm.

**Standard of Review**

The defendant "bears a heavy burden" on a Rule 29 claim as the court "must credit every inference that the jury may have drawn in favor of the government." *United States v. Finley*, 245 F.3d 199, 202-03 (2d Cir.2001) (internal quotation and citation omitted). "The jury's verdict must be sustained, if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (emphasis in original). In assessing a claim of insufficient evidence to support a conviction, "[t]he pieces of evidence must be viewed in conjunction, not in isolation, with every inference drawn in the Government's favor." *United States v. Podlog*, 35 F.3d 699, 705 (2d Cir.1994), *cert. denied*, 513 U.S. 1135, 115 S.Ct. 954, 130 L.Ed.2d 897 (1995). The court must "defer to a jury's assessments with respect to credibility, conflicting testimony, and . . . competing inferences that can be drawn from the evidence." *United States v. Jones*, 393

F.3d 107, 111 (2d Cir.2004) (internal quotation marks and citations omitted). In short, as the Second Circuit has put it, "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir.1999) (internal quotation and citation omitted).

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion the court may vacate any judgment and grant a new trial if the interest of justice so requires." "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir.1997). The Second Circuit has stated that a district court should exercise such authority only "in the most extraordinary circumstances." *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir.1993). "Although a trial court has broader discretion to grant a new trial pursuant to Rule 33 than to grant a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, where the truth of the prosecution's evidence must be assumed, that discretion should be exercised sparingly." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir.1992) (internal citation omitted).

## Discussion

In this post-trial motion for judgment of acquittal or a new trial, the defendant repeats his sweeping assertion that the evidence adduced at trial was insufficient to support his conviction. More specifically, he questions the plausibility of the officers' account of how they confronted the defendant. He argues that the jury never learned the precise distance between Sgt. Walsh's vantage point and the defendant, and suggests that Sgt. Walsh, from the back seat of the car, was too far away to see what was in the defendant's pocket. He wonders why Sgt. Walsh did not call

5

for back up and why the officers "had no specific plan before for approaching an allegedly armed individual." (Def. Memo in Support of Motion, at 2). These attempts to call into question the government's case fall well short of the defendant's high burden to sustain for relief under Rules 29 and 33.

At a general matter, the government, through the three police officers' collective testimony, provided more than ample evidence for the jury to conclude beyond a reasonable doubt, that the defendant knowingly possessed the firearm produced at trial. The officers all testified that the defendant fit the description provided to them by a reliable confidential informant, and they all testified that a gun was in fact recovered from the pocket of the defendant. The defense provided no arguments to directly rebut these essential facts. The jury, in reaching the guilty verdict, also heard and set aside the concerns the defense raised in its closing arguments about the plausibility of the officers' conduct.

Furthermore, reasonable inferences favorable to the government can be drawn to rebut each of defendant's specific objections as to the government's proof. The defendant did not press the government at trial about the precise distance of Walsh from the defendant. In any event, a rational trier of fact could reasonably find that a person sitting in a car double-parked near the middle of a narrow residential street would be able to see the butt of a gun in the pocket of a pedestrian standing on the sidewalk. That Sgt. Walsh managed to see the defendant's gun from the backseat of the car while the other two officers in the front seat did not, can be explained by the testimony of the other officers that they were surveying other portions of the street and were not focused on the defendant during the entire five minutes they sat in observation. That they did not call for back-up might be accounted for adequate manpower they had on hand. The defense chose not to cross-examine officers Myrie and Miller and elicited no

testimony to suggest that the police were undermanned. That Sgt. Walsh did not discuss a plan of approach with his colleagues before proceeding toward the defendant may be explained by his desire to catch the defendant off-guard by approaching him from behind. In any event, he and his colleagues adhered to a routine tactical approach by moving toward the defendant in a pincer fashion. These inferences are examples of what a rational trier of fact could have drawn in favor of the government from the evidence presented at trial. The defendant has not and cannot demonstrate that no reasonable trier of fact would have found him to be guilty. His Rule 29 motion is denied. Furthermore, the court finds that the interest of justice was satisfied by the jury verdict and denies his Rule 33 motion for a new trial.

## Conclusion

Accordingly, defendant's motion for relief under Fed. R. Crim. P. 29 and 33 are denied.

SO ORDERED.

Dated: Brooklyn, New York
January 11, 2008

/s/
DORA L. IRIZARRY
United States District Judge